\*\*E-filed 6/6/07\*\*

Paul Strauss, #153937
MINER, BARNHILL & GALLAND
14 W. Erie St.
Chicago, IL 60610
(312) 751-1170 (telephone)
(312) 751-0438 (telefax)

Attorneys for Plaintiffs Raul Medrano, Teresa J. Lara,
Faustino Garcia, Alejandro Garcia, Olga Leyva Velarde,
and Efren Ramos Fraide

Geoffrey F. Gega, #91980
COOK BROWN, LLP
1851 E. First Street, Suite 1440
Santa Ana, CA 92705
(714) 542-1883 (telephone)
(714) 542-1009 (telefax)

Attorneys for Defendant
D'ARRIGO BROS. CO., OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| RAUL MEDRANO, TERESA J. LARA, FAUSTINO GARCIA, ALEJANDRO GARCIA, OLGA LEYVA VELARDE, and EFREN RAMOS FRAIDE, on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>D'ARRIGO BROTHERS COMPANY OF CALIFORNIA,<br><br>Defendant | Case No.: C-00-20826 JF (RS)<br><br>CLASS ACTION<br><br>[~~PROPOSED~~] ORDER<br><br>Date:   May 29, 2007<br>Time:   10:00 a.m.<br>Ctrm:   4<br>Complaint filed:   August 4, 2000 |

Based on the papers filed by the parties and their representations at the fairness hearing held on May 29, 2007 and pursuant to Fed.R.Civ.P. 23(e), the Court approves the parties' settlement, finding that the settlement is fundamentally fair, adequate, and

- 1 -
**[PROPOSED] ORDER**
Case No. C-OO-20826 JF (RS)

reasonable; and this Order incorporates all of the terms of the parties' *Settlement and Release of Class Action Claims Between Plaintiffs and Defendant* submitted to this Court for preliminary approval on October 3, 2006, and so approved on October 10, 2006.

### Dismissal and Release.

Pursuant to the terms of the settlement agreement, this case is dismissed with prejudice and all class members are barred from prosecuting against D'Arrigo Bros., its related entities and their officers, directors, or employees, any individual or class claims which are or could have been asserted in this action, including without limitation any claims arising out of the acts, facts, occurrences, or omissions set forth in plaintiffs' original complaint, plaintiffs' amended class action complaint, and the plaintiffs' second amended class action complaint deemed filed by the Court by reason of its Order dated August 27, 2004. The Court retains jurisdiction of the case to construe, interpret, and enforce the provisions of the settlement agreement for a period of one year following payment of the amounts called for by the settlement.

### Adequacy of the Settlement.

The factors the Court is to consider in reviewing the settlement are described in *In re Mego Financial Corporation Securities Litigation*, 213 F.3d 454, 458 (9th Cir. 2000):

> "Assessing a settlement proposal requires a district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel;...and the reaction of the class members to the proposed settlement." *Hanlon [v. Chrysler Corp.]*, 150 F.3d [1011 (1998)] at 1026 (citations omitted).... In addition, the settlement may not be the product of collusion among the negotiating parties. *Class Plaintiffs [v. City of Seattle]*, 955 F.2d [9th Cir. 1998)] at 1290.

Several of these factors can be addressed in short order. Plaintiffs had a strong case on at least some aspects of liability -- the Court granted partial summary judgment to the plaintiffs on liability. There was no significant risk that the case would not continue as a class action. Settlement was reached after discovery was complete and the parties were prepared for trial and after the Court's summary judgment decision. Plaintiffs' counsel is experienced in cases of this kind and strongly recommends the settlement. There are no objections to the settlement. Settlement negotiations were supervised by Magistrate Judge Brazil and there is no evidence of collusion.

The remaining considerations are the amount of the settlement, potential damages, risks for plaintiffs in continuing to litigate, and the amount of time it would take to resolve this case if it was not settled.

The settlement provides for a $3.5 million settlement fund for plaintiffs, class members, and to pay attorneys' fees and expenses. The settlement fund also has to be reduced to pay the settlement administrator's charges, to the extent they are more than $75,000.00 that defendant will pay under the settlement, separate and apart from the $3.5 million settlement fund. The settlement administrator estimates that its final charges will be $18,952.00 more than the $75,000.00 that defendant is required to pay. Plaintiffs' attorneys are asking the Court to approve $1,232,000.00 for fees and expenses -- which is below their lodestar, as described below. Subtracting the settlement administrator's charges and the fees and expenses from the $3.5 million settlement fund, plaintiffs and the class will receive $2,249,048.00 from the settlement. (That includes $30,000.00 held in reserve to pay late claims.)

As described by plaintiffs' counsel, as they entered into settlement negotiations, they had three areas of potential recovery: damages for lost wages, waiting-time penalties under California Labor Code §203, and penalties under the AWPA, 29 U.S.C. § 1854(c). In each area there is a significant range as to what plaintiffs and the class might have received. And in each area they had to discount for the likelihood that class members would not be located and would not file claims.

*Lost wages.* Applying the provisions of IWC Wage Order 14-80, the Court held in its summary judgment decision that D'Arrigo is liable because it failed to pay the minimum wage. That is, when one includes mandatory waiting and travel time as hours worked, and divides total pay for a week by total hours worked, the average amount per hour was on some occasions less than the minimum wage. To recover individually, the Court held, plaintiffs and class members must show that they received less than the minimum wage required by Wage Order 14-80, looking at their total earnings over the course of the week and comparing that with what they would have earned if they were paid the minimum wage for all hours worked, including mandatory waiting and travel time. The Court also held D'Arrigo liable to the extent it failed to pay required overtime wages, when travel time is taken into account.

In its summary judgment decision, the Court rejected plaintiffs' argument that class members should be compensated for their travel time, whether or not their total earnings for the week were above or below the minimum wage. The Court also did not rule on whether plaintiffs and class members in fact were not paid for their travel time, leaving open DArrigo's position that class members' piece-rate earnings compensated workers both for their time in the fields and their time traveling.

The Court's ruling that damages are only owed when wages dropped below the minimum wage was a crucial turning point in this case. According to plaintiffs' counsel, applying the Court's ruling means that the total lost wages for failure to pay the minimum wage and overtime is $1,178,645.00. And that amount is calculated using D'Arrigo's rules on when it would pay overtime. If the Court held that damages for lost overtime should be calculated using only what IWC Wage Order 14-80 requires, total lost wages and overtime would be only $250,423.00.

These are the total possible damages for lost earnings if every class member was located and filed a claim. That is extremely unlikely. Indeed, in this case, of the 3,074 class members, 974 have filed claims -- only a little more than 30% of the class.

Assuming that the case proceeded to judgment and 30% of the class filed claims, the damages would have been dramatically reduced. Using the Court's ruling on liability and D'Arrigo's overtime rules, the class would have recovered $353,593.50. If the Court's ruling and the overtime rules in the Wage Order were applied, the class would have recovered only $75,126.90 for lost wages.

*Waiting-time penalties.* California Labor Code § 203 provides for waiting-time penalties, wages when an employee is discharged without being paid wages that he is owed. A day's wage is owed for each day the employee is not properly paid, for up to a maximum of 30 days.

In theory, plaintiffs could argue in settlement negotiations that they had a substantial claim for waiting-time penalties. But there were significant problems and risks for plaintiffs in pursuing the claim for waiting-time penalties.

First, defendant had a good-faith defense for waiting-time penalties for anyone discharged prior to the California Supreme Court's decision in *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000), issued in March, 2004. Until the Supreme Court's decision in *Morillion*, defendant argued, it could rely in good faith on the trial court and appellate court's decisions in *Morillion*, holding that an employer like D'Arrigo did not have to pay wages for mandatory travel time. In this Court's initial decision on summary judgment, the Court accepted D'Arrigo's argument, writing that "...the defendant should not be penalized if the law is unclear and the defendant did not withhold payment in bad faith. It is undisputed in this case that the law was unclear until *Morillion*, which was decided in 2000." (Order granting plaintiffs' motion for partial summary judgment, 3/16/04, at 10.) The Court ultimately removed all discussion of waiting-time penalties from its amended order on summary judgment (9/22/04), but the discussion in the March 16, 2004 order certainly was not encouraging for plaintiffs on this issue.

Second, defendant had a strong argument that waiting-time penalties were not owed to anyone discharged after August 4, 2000, when plaintiffs filed their lawsuit. Labor Code § 203 provides:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid *or until an action therefore is commenced*; but the wages shall not continue for more than 30 days.

(Emphasis added.) D'Arrigo argued that by filing the action on August 4, 2000, plaintiffs cut off the possibility of waiting-time penalties after that date. The Court initially agreed with that argument, writing in its first summary judgment decision that waiting-time penalties might be available to any employee who was discharged "after the *Morillion* decision and before this lawsuit was filed." (Order, 3/16/04, at 11.) The Court removed that discussion in the amended order issued on September 22, 2004 and plaintiffs do not agree that filing the lawsuit cut off the possibility of waiting-time penalties for employees who were discharged after the lawsuit was filed. But that is obviously an issue on which plaintiffs could lose.

Finally, D'Arrigo had a strong argument that when employees were subject to an end-of-season layoff, they were not "discharged" as that term is used in Labor Code § 203. In its initial summary judgment decision that is what the Court held:

> [S]easonal employees such as Plaintiffs are not "discharged" within the meaning of the statute when they are "laid off" during the off-season with the expectation that they will return to work at the onset of the subsequent season. Plaintiffs generally returned the following season, keeping their seniority rights.... Statutory penalties generally are unwarranted.

(Order, 3/16/04 at 10.) Plaintiffs disagree with that conclusion -- they argue that they could show that under the Labor Code an end-of-season layoff is a "discharge" -- and the Court in its amended order of September 22, 2004 did not include this discussion. But again it's clear that this is an issue on which plaintiffs might lose.

   Plaintiffs' counsel represents that if plaintiffs lost on the first issue and either the second or the third, it would eliminate almost all of the claims for waiting-time penalties. Plaintiffs and the class would not have any claim for waiting-time penalties for discharges prior to March, 2000. And they would not have any claim for waiting-time penalties from seasonal layoffs, eliminating the vast majority of the claims for waiting-time penalties. Indeed, if plaintiffs lost on the first and second issues, only employees who worked after March, 2000 and were permanently discharged before August 4, 2000, would have a claim for waiting-time penalties. And D'Arrigo would only have to pay waiting-time penalties to the subset of those employees who could be located and filed claims.

   *AWPA* penalties. AWPA provides for statutory penalties for each violation, up to $500.00 per person, with a maximum penalty of $500,000.00 in class actions. 29 U.S.C. § 1854(c). The Court found two violations of AWPA: defendant failed to pay all wages when due and failed to properly record all hours worked. *See* 29 U.S.C. § 1832(a) and 1831(c). The amount of the penalty is left to the Court's discretion.

   In theory, the maximum amount plaintiffs and the class could have received for the AWPA violations is $1,000,000.00-- two violations with penalties of $500,000.00 for each of them. But the Court could have ruled that plaintiffs and class members should not receive the maximum penalties. Plaintiffs' counsel points out that the Court could have held that significant penalties should not be awarded because D'Arrigo relied in good faith on the lower court decisions in *Morillion* and quickly changed its policy after the Supreme Court's decision in *Morillion*; the Court could have concluded that class members who received waiting-time penalties should not also get penalties under AWPA; and the Court could have decided that D'Arrigo's two violations stem from the same source of conduct, so the class should receive AWPA penalties as if there was one violation, not two.

   It's impossible to say now what would have happened if the case did not settle. But given the complexity of the issues and the risks that plaintiffs faced, recovering

$2,249,048.00, is certainly fair, adequate, and reasonable for purposes of settlement. If the settlement is not approved, there is no guarantee that plaintiffs and the class can do better. They might do much worse.

The last factor the Court is required to consider is how long it would take to resolve the case if the settlement is not approved. t would take very long time. If the settlement were not approved and litigation was resumed, plaintiffs' counsel reports that plaintiffs would start by asking the Court to reconsider its ruling on damages in light of *Armenta v. Osmose*, 135 Cal.App.4th 314 (2nd Dist. 2005). If the Court followed *Armenta* and held that plaintiffs and class members have to be paid for all travel time, and not just to the extent their earnings fell below the minimum wage, the Court would have to determine -- on a motion for summary judgment or after a trial -- whether the piece rate paid to plaintiffs and class members was intended to compensate them for their travel time as well as their time working in the fields. The Court would have to resolve the legal issues with respect to waiting-time penalties, discussed above. There would have to be a short trial or some other type of proceeding to determine if members of the hoeing and thinning crews were required to ride the bus. (D'Arrigo conceded that point for the purposes of this settlement only.) And then there would be contested damages proceedings -- D'Arrigo would have the opportunity to contest each class member's claim. After all of that work plaintiffs' counsel believes it is very likely that one side or the other would appeal -- whichever side lost on the application of *Armenta v. Osmose* would probably appeal the Court's decision, and whichever side lost on the crucial decisions about waiting-time penalties would probably appeal those decisions as well. It could easily take another two years or more before the appeals were completed. And if the judgment of the Court was reversed on appeal there would have to be new damages proceedings on remand.

In sum, all of the relevant factors favor approving the settlement. It's a very good result for plaintiffs and the class given the potential damages and risks of proceeding to final judgment. It was negotiated after discovery was complete by

- 8 -
[PROPOSED] ORDER
Case No. C-OO-20826 JF (RS)

competent counsel at arm's length under the supervision of a Magistrate Judge. There are no objections to the settlement. If the settlement is not approved, plaintiffs and the class will face years of additional litigation.

<u>Incentive awards of $7,500.00 for each of the named plaintiffs.</u>

Plaintiffs request a special award of $7,500.00 to each of the six named plaintiffs to be paid from the $3.5 million settlement fund. The Court approves that request.

The named plaintiffs in a class action confer a benefit on the class by taking the risks involved in filing and pursuing a case for the class, aiding counsel in prosecuting the case, responding to discovery, and attending mandatory settlement conferences. To compensate named plaintiffs for their time, effort, and the risk they took for the benefit of the class, the Court has discretion to approve an "incentive award" for them, to be paid out of the fund recovered for plaintiffs and the class.

Plaintiffs and plaintiffs' counsel represent that plaintiffs believed they might be fired because they filed suit against their employer. In addition, according to plaintiffs' counsel, the plaintiffs gave a substantial amount of assistance and time to plaintiffs' counsel throughout the case, explaining how D'Arrigo's travel rules worked, what the rules were for each crew, suggesting witnesses who might testify, and discussing the position class members were likely to take with respect to settlement. The named plaintiffs appeared for full-day depositions, answered interrogatories, requests to produce, first supplemental interrogatories, and second supplemental interrogatories. They appeared for each of the settlement conferences with Magistrate Judge Brazil and two separate days of settlement negotiations directly with D'Arrigo. They lost pay for each of the days they attended settlement meetings as well as the days spent at their depositions.

Without the named plaintiffs' willingness to take the risk to file and pursue this case and without their work during the course of the case, there would be no class recovery. The Court therefore approves the payment of $7,500.00 to each of the named

1  plaintiffs from the $3.5 million settlement fund.  In approving these payments, the
2  Court makes no finding that there was a threat of retaliation or that defendant retaliated
3  in any way against the plaintiffs based on their participation in this case.

5  <u>Attorneys' & fees and expenses.</u>
6  Plaintiffs seek Court approval for payment of $1,232,000.00 in attorneys' fees
7  and expenses to be paid from the settlement fund and seeks approval of the provision of
8  the settlement for payment of a separate $30,000.00 for fees incurred in negotiating the
9  final terms of the settlement, guiding the settlement through the Court, and monitoring
10 the administration and distribution of the settlement fund.
11 Plaintiffs' counsel have submitted detailed time records and records of their
12 expenses.  They have also provided affidavits to establish that their rates are reasonable
13 market rates.  Based on these records and affidavits, their total lodestar is $1,725,915.59
14 in fees and $228,115.24 in expenses.  (That amount does not include fees previously
15 paid by D'Arrigo pursuant to earlier orders by the Court.)  Thus, plaintiffs' attorneys
16 ask the Court to approve fees and expenses that are $722,030.83 below their
17 ///
18 ///
19 ///

1  lodestar. No class member has objected to payment of the requested fees and expenses.
2  The Court finds the amounts requested by plaintiffs' counsel to be fair, adequate, and
3  reasonable and approves the payment of fees and expenses as requested.

5  Approved as to form:                              MINER, BARNHILL & GALLAND

7  Dated:_____                         By: /s/ Paul Strauss
8                                                        Paul Strauss
                                                         Attorneys for Plaintiffs

10 Approved as to form:                              COOK BROWN, LLP

12 Dated:_____                         By: /s/ Geoffrey F. Gega
13                                                       Geoffrey F. Gega
                                                         Attorneys for Defendant

15     IT IS SO ORDERED.

17 Dated:  6/6/07

                                                    _____
                                                    The Honorable Jeremy Fogel
                                                    U.S. District Court Judge

20 ///

## PROOF OF SERVICE

Nujah Muhammad certifies that she caused a copy of the foregoing [Proposed] Order to be served upon all counsel of record, by this Court's electronic-filing system, this fifth day of June, 2007.

*[signature]*
Nujah Muhammad